**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **JENNIFER E. RUOTOLO, REBECCA BARTON, JOHAN TAPIA AND TIMOTHY BARTHOLOMEW, individually, and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**TWIN RIVER WORLDWIDE HOLDINGS, INC. n/k/a BALLY'S CORP., UTGR, INC. d/b/a TWIN RIVER LINCOLN CASINO RESORT and TWIN RIVER – TIVERTON, LLC d/b/a BALLY'S TIVERTON,**<br><br>**Defendants.** | **Case No. 1:20-cv-00530-WES-PAS**<br>**[Consolidated Case]** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND EXPENSES TO CLASS COUNSEL AND SERVICE AWARDS TO NAMED PLAINTIFFS**

Plaintiffs, without opposition from Defendants, hereby file this Memorandum in Support of Plaintiffs' Unopposed Motion for Attorneys' Fees and Expenses and Service Awards to Named Plaintiffs. Specifically, Plaintiffs respectfully requests that the Court: (1) approve Class Counsel's application for attorneys' fees in the amount of one-third (33.33%) of the common fund ($466,620) and reimbursement of expenses in the amount of $6,990.56; and (2) approve a $5,000 service award for each of the named four Named Plaintiffs. As demonstrated below, the attorneys' fees and expenses and the service awards are fair and reasonable.

## INTRODUCTION

Class Counsel produced an excellent result for class members. The requested fees are justified under either the percentage of fund method or lodestar method, particularly given the meaningful result achieved for low wage workers. In this hybrid FLSA and state wage and hour class and collective action case alleging tip credit and rounding violations under federal and state law, Class Counsel skillfully and speedily delivered a $1,400,000 settlement covering approximately 2,400 hourly employees at Bally's Twin River and Bally's Tiverton, which represent approximately 70% of the disputed wages at issue.

## ARGUMENT

### I. THE REQUESTED AWARD OF ATTORNEYS FEES AND OUT-OF-POCKET EXPENSES IS FAIR AND REASONABLE

Pursuant to Fed. R. Civ. P. 23(h), Class Counsel seek an attorney fee award of one-third (33.33%) of the common fund ($466,620) plus reasonable costs of $6,990.56 to compensate Class Counsel for the time, expenses, and risks, incurred in litigating this case and achieving this result on behalf of the Settlement Class. The amount of the requested fee award was disclosed to the Settlement Class in the Notice, to which no class member objected.[1] As discussed below, under either a percentage approach of the lodestar method for assessing a proposed fee award, an award to Settlement Class Counsel of $466,630 and $6,990.56 in out-of-pocket expenses is fair and reasonable.

There are two general methods for assessing awards of attorney's fees in class action cases: (1) the percentage method and (2) the lodestar method. The First Circuit Court of Appeals has

[1] Although three class members did object to the amount of their specific settlement allocation, none objected specifically to the fee. The deadline for class members to request exclusion is March 18, 2023. Plaintiffs will address all objections in connection with moving for final approval of the settlement.

endorsed the percentage method over the lodestar method.[2] *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) (*citing* Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, 63-64 (1994)); *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 77-78 (D. Mass. 2005) (noting that the percentage method constitutes the "prevailing praxis" and that "[c]ontrary to popular belief it is the lodestar method, not the [percentage] method, that breaks from precedent").

[2] Recovery of fees based on the entire fund "permits litigants or lawyers who recover a common fund for the benefit of persons other than themselves to obtain reasonable attorney's fees out of the fund, thus spreading the cost of the litigation to its beneficiaries." *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir. 2010). Courts prefer the percentage method for several reasons. First, the percentage method "directly aligns the interests of the class and its counsel [because it] provides a powerful incentive" for attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F. 3d at 121 (internal quotation marks and citations omitted); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) (same). Second, the percentage method is closely aligned with market practices because it mirrors the practice of contingent fee attorneys who "typically negotiate percentage fee arrangements with their clients." *Id., see also Sewell v. Bovis Lend Lease, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *29 ("[The percentage] method is similar to private practice where counsel operates on a continency fee, negotiating percentage of any fee ultimately awarded."); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (the percentage approach is "uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys."). Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie v. Merchants Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999) (internal quotation marks and citation omitted). *See also Goldberger v. Integrated Res., Inc.*, 209 F. 3d 43, 48-49 (2d Cir. 2000) ("primary source of dissatisfaction [with the lodestar method] was that it resurrected Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits"). Accordingly, Class Counsel seek attorneys' fees pursuant to the percentage method.

**a. <u>Percentage Method</u>**

Courts in the First Circuit have looked to the following factors to assess reasonableness of attorneys' fees under the percentage method: (1) the extent of the benefit obtained; (2) the presence or absence of objections; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; (7) the awards in similar cases; and (8) public policy considerations, if any. *In re Relafen*, 231 F.R.D. at 79, citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000), and *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Lupron*, 01-CV-10861-RGS, 2005 WL 2006833, at *3 (D. Mass. 2005); *Hill v. State Street Corp.*, Civil Action No. 09-12146-GAO, 2015 WL 127728, *17 (D. Mass. Jan. 8, 2015). Application of these factors here demonstrates that the requested fee award is fair and reasonable.

**i. <u>The extent of the benefit obtained</u>**

Here, the monetary and non-monetary results achieved for the class are substantial and excellent. Class Counsel recovered approximately 70% of class members' disputed tip credit damages through this settlement. *See Kauffman v. U-Haul Int'l, Inc.*, 2019 WL 1785453, at *3 (E.D. Pa. Apr. 24, 2019) (explaining that the proposed settlement recovery of 28% of alleged unpaid overtime was "a meaningful portion…of his alleged unpaid overtime wages.").[3] Class

[3] *See, e.g.*, *Arrington v. Optimum Healthcare IT, LLC*, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018) (finding 45%-90% recovery of class damages supported one-third fee request); *Mehling v. N.Y. Life Ins. Co*., 248 F.R.D. 455, 462 (E.D. Pa. 2006) (approving settlement that represented 20% of "best possible" recovery and noting courts that have approved settlements with even lower ratios); *Southwood v. Milestone Mgmt. PA-Feasterville, LLC*, 2020 WL 5554396, at *4 (E.D. Pa. Sept. 15, 2020) (approving FLSA and PMWA settlement for "54% of the amount Plaintiff claims to be owed" and finding this to be a "positive result.").

Counsel maximized the total recovery efficiently and the settlement fund will make significant payments to class and collective members. The net fund will be allocated as follows:

- $75,000 will be allocated evenly among all Rule 23 class members;
- $75,000 will be allocated evenly among FLSA collective members with rounding and regular rate of pay claims; and
- The remaining portion of the net fund, which Class Counsel estimate will be approximately $700,000 will be allocated proportionally among FLSA collective members with tip credit notice claims based on their proportional share of tip credit damages during the class period. It should be noted here that the tip credit damages primarily drove damages in the case and are, as a result, apportioned the largest share of the settlement.

Ex. 1, Settlement Agreement at ¶ 3.4.

After accounting for the cost of settlement administration, service awards, and Class Counsel's fees and expenses, The estimated settlement payments are as follows:

- Rule 23 class members (average $31.32);
- FLSA Rounding/Improper overtime payments (average $31.32); and
- FLSA Tip Credit (average $833.09).

These are meaningful payments for anyone, but they are particularly significant to the dealers here, who are paid less than minimum wage.

Though every settlement stands on its own merit, comparing this settlement to other tip credit notice settlements around the country shows that this settlement is an outstanding recovery. For example, in *Bartakovits v. Wind Creek Bethlehem, LLC*, Class Counsel recovered $6,000,000 representing 57% of class members' tip credit damages resulting in an average settlement payment of $2,110. 2022 WL 702300, at *2 (E.D. Pa. Mar. 7, 2022). Judge Leeson of the Eastern District of Pennsylvania referred to that settlement as "a significant recovery in a wage case." *Id.* This

settlement compares very favorably to *Bartakovits* and other tip credit notice class actions, supporting the requested one-third fee.[4]

**ii. <u>The presence or absence of objections</u>**

Three individuals objected to the settlement and were not willing to sign the Opt-In Consent Form because they did not agree with their individual settlement amount. However, no class member objected to the settlement because of the requested award of attorneys' fees or out-of-pocket expenses. This is a strong indicator of the reasonableness of the requested fee award. *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (second Grinnel factor satisfied with no objections only 3 class members asked to be excluded).

**iii. <u>Skill and efficiency of the attorneys</u>**

As discussed in Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement, Class Counsel are qualified and experienced in class action litigation and have significant experience in wage and hour class and collective actions. Moreover, several of the firms representing Plaintiffs have specific expertise litigating wage and hour claims against casino operators having collectively prosecuted more than 20 class and collective actions against major

---

[4] *See, e.g.*, *Koenig v. Granite City Food & Brewery, LTD, et al.*, Case No. 2:16CV01396, ECF No. 125 (W.D. Pa. March 28, 2018) ($305,000 common fund settlement of tip credit notice claims representing 41.7% of tip credit damages resulting in a $703.37 average payment); *Cope v. Let's Eat Out, Inc.*, Case No. 6:16-cv-03050-SRB, ECF No. 316 at *12 (W.D. Mo. April 17, 2019) (motion for approval of settlement creating $650,000 common fund to resolve tip credit notice and noting "the settlement provides Opt-in Plaintiffs with 25% of their owed minimum wages."); *Cope v. Let's Eat Out, Inc.*, 2019 WL 11790417 (W.D. Mo. Sept. 6, 2019) (approving settlement); *Black v. P.F. Chang's China Bistro, Inc.*, Case No. 16-CV-3958, ECF No. 92 at *7 n. (N.D. Ill. May 15, 2017) (motion to approve settlement of tip credit notice claims representing 35.5% of the value of the case and providing an average payment of $715 to opt-in plaintiffs); *id*. at ECF No. 103 (approving settlement); *Day v. PPE Casino Resorts, LLC*, Case No. 1:20-cv-01120-RDB, ECF No. 43-1 (D. Md. Oct. 13, 2021) ($3,050,000 settlement of tip credit notice claims representing 20% of damages with average payments of $950); *see id*. at ECF No. 45 (approving settlement).

casino operators recovering tens of millions of dollars for minimum wage and tipped casino workers. Ricke Decl. at ¶¶ 3-8. As relevant here, Class Counsel have secured class and conditional certification of similar tip credit notice claims for thousands of casino workers across the country. *See, e.g.*, *Adams v. Aztar Indiana Gaming Co., LLC*, 2022 WL 593911, at *11 (S.D. Ind. Feb. 25, 2022) (Class Counsel won class and conditional certification of tip credit notice claims (among others) at Tropicana Evansville); *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 899 (D. Kan. 2021) (Class Counsel won conditional certification of tip credit notice claims (among others) for thousands of tipped workers at 13 Boyd Gaming casinos around the country); *MacMann v. Tropicana Ent., Inc.*, 2021 WL 1105500, at *8 (E.D. Mo. Mar. 23, 2021) (Class Counsel won conditional certification of tip credit notice claims (among others) for dealers at Lumiere Casino).

From this experience, Class Counsel have a deep knowledge of wage and hour practices in this industry, the type of evidence that typically exists, and how to value these claims. Ricke Decl. at ¶¶ 3-8. This experience has made Class Counsel uniquely skilled at identifying and obtaining the evidence necessary to analyze that data and evidence produced for mediation, Class Counsel had all the information necessary to evaluate the merits of Plaintiffs' claims, including: the Defendants' arguments and legal authority as to how they claimed to provide notice of the tip credit to class members, Defendants' overtime calculation practices for tipped employees, Defendants' timeclock rounding practices for hourly workers, and Defendants' wage and hour data to calculate class and collective-wide damages (which entailed reviewing more than 250,000 wage records for many hundreds of class members). This factor weighs in favor of the requested fee award. *See Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (factor satisfied where Class Counsel had considerable experience in

litigating similar class action cases). In sum, Class Counsel's skill, experience, and reputation weigh in favor of approving the requested fee. Ricke Decl. at ¶¶ 3-8.

**iv. <u>Complexity and duration of the litigation</u>**

The complexity of the case and the way the case was handled supports the requested fee. Like most high-stakes wage and hour class actions, this case presented novel issues, including tip credit issues under federal and Rhode Island law, joint employer liability, and the propriety of class and conditional certification. *Hall v. Prosource Techs., LLC,* 2016 U.S. Dist. LEXIS 53791, at *47 (quoting *Siler v. Landry's Seafood House-N.C., Inc.*, No. 13-CV-587, 2014 U.S. Dist. LEXIS 90088 (S.D.N.Y. June 30, 2014)); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (recognizing that FLSA cases are complex and that hybrid actions are the most complex). This case was no different, consisting of an FLSA collective action and state law claims, covering approximately 2,400 individuals.

This case primarily hinged on several mixed questions of fact and law relating to whether Defendants provided sufficient notice of the FLSA's tip credit requirements. The defense involved fact intensive issues which required significant development of the record, which supports Class Counsel's request for attorneys' fees. *Frank*, 228 F.R.D. at 189 (mixed questions of fact and law supported award of attorneys' fees representing approximately 40% of the common fund). The procedural history and substantive nature of the claims were detailed in Plaintiffs' motion to preliminarily approve the settlement. *See* ECF No. 55. One point bears repeating: with this settlement, Class Counsel resolved *consolidated cases against two casinos*. Plaintiffs Ruotolo and Barton filed separate cases before this Court. The two casinos at issue in the cases are both in Rhode Island and subsidiary properties of Bally's. Without settlement, these cases would have

proceeded through conditional and class certification, trial, and appeal—consuming years of time and resources of the Court, the parties, and their counsel.

Against this backdrop, Class Counsel secured a tolling agreement and a mediation of the consolidated cases. The parties mediated the consolidated cases with help from well-known wage and hour mediator the Hon. Thomas J. Rueter (Ret., formerly United States Magistrate Judge of the Eastern District of Pennsylvania). At the mediation, Class Counsel secured an excellent result while avoiding postponing class members' relief for years. This "factor weighs in favor of approval." *Id*.; *see also Rothe v. Battelle Mem'l Inst.*, 2021 WL 2588873, at *11 (D. Colo. June 24, 2021) (holding relatively early settlement supported attorneys' fees request.).

**v. <u>Risk of nonpayment</u>**

The risk of litigation is also a factor in determining a fee award. "Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award." *In re Lupron Marketing & Sales Practice Litig.*, No MDL 1430, 2005 U.S. Dist. LEXIS 17456, at *15 (D. Mass. Aug. 17, 2005); *see also Hill v. State St. Corp.*, No. 09-12146-CAO, 2015 U.S. Dist. LEXIS 2166, at *11 (D. Mass. Jan. 8, 2015); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) ("n[o] one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."

At the time this action started, Class Counsel took considerable risk in prosecuting these cases as a class and collective action. Class Counsel agreed to handle the cases on a contingency fee basis. The contingency nature of the fee agreement puts a substantial risk of loss on Class Counsel because there are numerous stages during the litigation at which certification could fail. Plaintiffs would first have to successfully move to certify the class (conditionally in the case

of FLSA) and would then have to survive a motion to decertify by Defendants. Moreover, even if a class was certified under Rule 23, Defendants could seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). The numerous opportunities for certification to fail could lead to delay and create substantial risk of Plaintiffs failing completely. Finally, Class Counsel are fronting the costs and do not get paid unless they are successful in obtaining some recovery in the case on behalf of Plaintiffs.

Although Plaintiffs could have brought individual claims in court or through the Department of Labor, they chose to bring a class and collective case to make a larger impact. Facing a large corporation defended by experienced and highly skilled counsel, Plaintiffs could very well have lost this case at trial and Class Counsel would have been out tens of thousands of dollars in expenses and time. Moreover, Class Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute this litigation against Defendants through discovery, motion practice, trial, and potential appeals would involve some complex factual and legal issues. *See Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *7 (D. Mass. Sept. 30, 2016); *Tompkins v. Farmers Ins. Exch.*, 2017 WL 4284114, at *10 (E.D. Pa. Sept. 27, 2017); *Fein*, 2017 WL 4284116, at *12; *see also Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 253 (D.N.J. 2005) (finding this factor supported approval of fee request where class counsel prosecuted the case on a contingency fee basis and advanced litigation expenses). In short, Class Counsel maintains that the risks associated with this wage and hour litigation supports the request for attorneys' fees.

**vi. <u>Amount of time devoted by class counsel</u>**

Class Counsel devoted his time and effort in achieving a fair and reasonable settlement. More specifically, in this case, the total lodestar figure in this case through March 15, 2023, as

estimated by Class Counsel, is $366,817. *See* Ricke Decl. at ¶¶ 9-11; Morneau Decl. at ¶¶ 26-28 and Steffans Decl. at ¶¶ 8-10. The time and effort dedicated to this case helped obtain the favorable result achieved by the settlement and confirms that the fee request is reasonable.

**vii. <u>Awards in similar cases</u>**

Courts in this First Circuit often award one-third of the common fund as attorneys' fees in class cases. *See, e.g., In Re Relafen Antitrust Litig*., 231 F.R.D. 52 (D. Mass. 2005) (awarding class counsel $22,311,000 in fees or 33% of class fund of $67,000,000, plus a separate award of litigation expenses in the amount of $1,297,301); *Hochstadt v. Boston Scientific Corp.*, No. 08-CV-12139, slip op. at 10 (D. Mass. Aug. 11, 2011) (awarding 33 1/3% of gross settlement fund); *In re Stocker Yale, Inc. Sec. Litig.*, No. 05-CV-117, 2007 WL 4589772, at * 6 (D.N.H. Dec. 18, 2007) (awarding 33% of gross settlement fund); *In re Relafen*, 231 F.R.D. at 82 (awarding 1/3 of settlement fund); *Malanka v. de Castro*, Nos. 85-CV-2154, 1990 U.S. Dist. LEXIS 18171, at *3 (D. Mass. Nov. 20, 1990) (awarding one-third of settlement fund); *Lauture v. A.C. Moore Arts & Crafts, Inc*., No. 17-cv-10219, 2017 U.S. Dist. LEXIS 195147, at *3 (D. Mass. Nov. 28, 2017) (finding one-third fee award of $2.9 million settlement "appropriate because it mimics the market" and declining to perform a lodestar cross-check); *Roberts v. TJX Cos.*, No. 13-cv-13142-ADB, 2016 U.S. Dist. LEXIS 136987, at *45 (D. Mass Sep. 30, 2016) (approving fee award of one-third of the fund recovered, including a lodestar multiplier of nearly 2); *Lapan v. Dick's Sporting Goods*, No. 13-cv-11390-RGS, Dkt. Nos. 220-21 (D. Mass. April 19, 2016) (approving thirty-three and one-third percent of $3.3 million settlement); *Barbosa v.Publishers Circulation Fulfillment, Inc.*, No. 08-cv-10873 (D. Mass. Nov. 25, 2009) (approving one-third fee award of $1.4 million settlement fund); *Swack v. Credit Suisse First Bos., LLC*, No. 1:02-cv-11943-DPW, Dkt. No. 114 (D. Mass. Jul. 18, 2006) (awarding 33%).

As discussed above, the settlement creates a $1,400,000 common fund. Class Counsel are requesting attorneys' fees of one-third (33.33%) of the common fund ($466,620) plus reasonable expenses of $6,990.56. The request is within the range typically awarded by courts in the First Circuit and consistent with awards in similar cases within this district.

**viii. <u>Public Policy Considerations</u>**

Public policy considerations weigh in favor of Class Counsel's requested fees. In rendering awards of attorneys' fees, district courts consider "the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399. The FLSA and state wage and hour laws are remedial statutes designed to protect workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work") (internal quotation marks omitted). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes. *See Hall*, 2016 U.S. Dist. LEXIS 53791, at *51; *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 U.S. Dist. LEXIS 1120, at *9 (S.D.N.Y. Jan. 7, 2010).

In these types of cases, where each individual's economic damages may be relatively modest and where the individual plaintiffs usually do not have the resources to pay substantial attorneys' fees and costs in advance, obtaining counsel would be extremely difficult were it not for the statutory provision for attorney's fees and costs for prevailing parties and the potential for recovering a fee which potentially represents an enhancement over regular hourly rates. Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorney[s] general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Toure v. Amerigroup*

*Corp*., No. 10 Civ. 5391, 2012 U.S. Dist. LEXIS 110300, at *14 (E.D.N.Y. Aug. 6, 2012). An award of attorneys' fees helps to ensure that "plaintiffs' claims [will] . . . be heard." *Frank*, 228 F.R.D. at 189. If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions [.]" *Id*. Therefore, public policy favors adequate awards of attorneys' fees in these types of cases to encourage aggrieved plaintiffs to bring these actions and to provide incentives for plaintiff's counsel to take such cases.

**b. <u>Lodestar Method</u>**

In addition to the percentage method, courts in the First Circuit also loosely use the lodestar method as a "baseline" or "cross check" for evaluating the reasonableness of a requested fee award in a class action settlement.[5] The lodestar method focuses on the "question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco*, 535 F. Supp. 2d at 270, citing *Thirteen Appeals*, 56 F.3d at 307; *In re Relafen*, 231 F.R.D. at 81 ("the lodestar provide a useful perspective on the reasonableness of a given percentage award").

Under the lodestar method, a total lodestar figure is calculated by estimating the number of hours spent on the litigation by the hourly rates, and that figure is then divided into the amount of the fee award requested to determine "the lodestar multiplier to compare to multipliers in other cases." *In re Relafen*, 231 F.R.D. at 81, quoting Manual for Complex Litigation § 14.122. In this case, Class Counsel has expended 584.7 hours in furtherance of this case through March 15, 2023, representing a total lodestar of $366,817. This figure results in a multiplier of 1.27, a number

---

[5] Some court in the First Circuit have awarded fees under the percentage method without analyzing class counsel's lodestar. *See, e.g., In re Celexa and Laxapro Marketing and Sales Practices Litig.*, 2014 WL 4446464, at *8 (D. Mass. Sept. 8, 2014); *Latorraca v. Centennial Tech.*, 834 F. Supp. 2d 25, 27-29 (D. Mass. 2011).

which is decreasing as Class Counsel invest additional time in the case. A multiplier of 1.27 is consistent with those awarded in other cases. *See, e.g.*, *Bettencourt v. Jeanne D'Arc Credit Union*, 2020 WL 3316223 (D. Mass. June 17, 2020) (range of multipliers typically allowed by this Court (1x to 2.7x); *In re Tyco*, 535 F. Supp. at 271 (a lodestar multiplier of 2.697 is "among the lowest of the lodestar multipliers for the top securities fraud settlements"); *In re Relafen*, 231 F.R.D. at 82 (finding multiplier of 2.02 to be "appropriate" in consumer class action); *In re Lupron*, 2005 WL 2006833, at *6 (applying multiplier of 1.41 in consumer class action). Analyzing the requested fee award under the lodestar method further confirms its reasonableness.

**i. <u>Class Counsel Will Spend Time After Final Approval</u>**

The Court should also take into account the time that Class Counsel will spend time administering the settlement after final approval. Because Class Counsel will be required to spend additional time on this litigation administering and enforcing the settlement, the lodestar multiplier will diminish. *Hall*, 2016 U.S. Dist. LEXIS 53791, at *45-46 (collecting cases). Class Counsel will spend time responding to Class Members' inquiries about the settlement, preparing for and attending the final fairness hearing, and answering questions from the claims administrator. Given that Class Counsel will perform additional work after the final approval hearing, which will further reduce their lodestar multiplier, Counsel's request is "even more reasonable than it appears at first glance." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013).

## II. <u>CLASS COUNSEL'S REQUEST FOR REIMBURSEMNT OF LITIGATION EXPENSES IS REASONABLE</u>

Class Counsel "is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F.Supp.2d 72, 108 (D.N.J. 2001). Here, the costs are typical for a class action, were necessary, and were reasonably related to the investigation, prosecution, and

settlement of the class action. *See Young Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (class counsel was entitled to reimbursement for travel and lodging, local meetings and transportation, depositions, photocopies, filing, court and witness fees, mediation, and *pro hac vice* fees).

Class Counsel seeks reimbursement of $6,990.56 for litigation expenses that were necessarily incurred in the prosecution of the case, including filing fees, *pro hac vice* fees, service of process fees, mediation fees, shipping expenses, copying expenses, the cost of electronic legal research, and the cost of engaging expert data analysts—all of which Class Counsel would typically bill to hourly fee-paying clients. The requested expenses should be approved. Ricke Decl. at ¶¶ 9-11; Morneau Decl. at ¶¶ 26-28 and Steffans Decl. at ¶¶ 8-10.

## III. **THE PROPOSED SERVICE AWARDS TO PLAINTFFS ARE REASONABLE**.

The Class Action Settlement Agreement contemplates an award of additional compensation of $5,000.00 for each of the four Named Plaintiffs. This proposed additional compensation for the Plaintiffs was disclosed to the members of the Settlement Class and no class member has specifically objected to the proposed service awards to the Named Plaintiffs. This favors granting the proposed additional award to the representative Plaintiffs.

"Courts 'routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *7 (D. Mass. Aug. 17, 2005) (citation omitted). In granting incentive awards, "courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement of laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allmerica Fin. Corp.*, 1999 WL 342042, at *3 (D. Mass.

May 19, 1999) (citations omitted). Moreover, courts routinely grant incentive awards similar to or greater than the amounts requested here. *See, e.g.*, *In re Lupron Mktg. & Sales Practices*, 228 F.R.D. at 98 (approving "modest" incentive award of up to $25,000 to each representative plaintiff); *Brenner v. J.C. Penney Co.*, 2013 WL 5591945, at *2 (D. Mass. Oct. 10, 2013) (approving $5,000 incentive award to the class representative); *Bezdek v. Vibram USA Inc.*, 79 F.Supp.2d 324, 352 (D. Mass. 2015) (awarding between $1,500 and 2,500 to class representatives); *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 2014 U.S. Dist. LEXIS 170100, at *24 (D. Mass. Dec. 9, 2014) (approving incentive awards of $10,000 for each of the ten Class Representatives); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 2014 U.S. Dist. LEXIS 125041, at *25 (D. Mass. Sept. 8, 2014) (awarding class representatives $10,000 each); *Pietrantonio v. Ann Inc.*, 2014 WL3973995, at *2 (D. Mass. Aug. 14, 2014) (awarding $3,000 incentive award); *In re JPMorgan Chase Mortgage Modification Litig.*, 18 F. Supp. 3d 62, 66 (D. Mass. 2014) (approving incentive awards of $3,500 to each of the class representatives); *Brenner v. Kohl's Corp.*, 2014 WL 988533, at *2 (D. Mass. Mar. 12, 2014) (awarding $3,000 incentive payment to class representative).

Here, the named Plaintiffs were active in the case. They met and talked with Class Counsel on numerous occasions about issues related to this case and actively participated in settlement discussions. In light of their contributions and personal sacrifices, the proposed service awards of $5,000 is appropriate and should be allowed.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court award Settlement Class Counsel one-third (33.33%) of the common fund ($466,620) plus reasonable costs of $6,990.56 to compensate them for attorneys' fees and out-of-pocket expenses incurred.

Dated: March 17, 2023

Respectfully submitted,

**FORMISANO AND COMPANY**
V. Edward Formisano (#5512)
100 Midway Place, Suite 1
Cranston, RI 02920
Telephone: (401) 400-4402
Facsimile: (401) 944-9695
edf@formisanoandcompany.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, MO Bar #43450, *pro hac vice*
Alexander T. Ricke, MO Bar #65132, *pro hac vice*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile: (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com

**McCLELLAND LAW FIRM**
*A Professional Corporation*
Ryan L. McClelland, MO Bar #59343, *pro hac vice*
Michael J. Rahmberg, MO Bar #66979, *pro hac vice*
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone: (816) 781-0002
Facsimile: (816) 781-1984
ryan@mcclellandlawfirm.com
mrahmberg@mcclellandlawfirm.com

By: ***/s/ Nancy Sheinberg***
**MULLER LAW, LLC**
Chip Muller (#7686)
Nancy Sheinberg (#7660)
47 Wood Ave.
Barrington, RI 02806
(401) 256-5171
chip@mullerlaw.com
nancy@mullerlaw.com

**STEFFANS LEGAL PLLC**
Benjamin Knox Steffans, *pro hac vice*
10 Wendell Ave. Ext. No. 208
Pittsfield, MA 01201
(413) 418-4176
bsteffans@steffanslegal.com

**CONNOR & MORNEAU LLP**
Jeffrey S. Morneau, *pro hac vice*
273 State Street, 2nd Floor
Springfield, MA 01103
(413) 455-1740
jmorneau@cmolawyers.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2023, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System.

***/s/ Nancy Sheinberg***